**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-182 (RWR)** |
| | ) | |
| **FLOYD LEE CORKINS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Floyd Lee Corkins, by his attorney, David W. Bos, Assistant Federal Public Defender, hereby submits the following memorandum in aid of sentencing in this matter. Pursuant to the sentencing factors set forth in 18 U.S.C. §3553(a) as delineated in Rita v. United States, 127 S. Ct. 2456 (2007), Kimbrough v. United States, 128 S. Ct. 558 (2007) and Gall v. United States, 128 S. Ct. 586 (2007), Mr. Corkins respectfully requests that the Court impose a sentence of 90 months on Count One, 90 months on Count Two, to run concurrent with the sentence imposed in Count One; and 48 months on Count Four, to run consecutive to the concurrent sentences imposed in Counts One and Two. Mr. Corkins further requests the Court to impose a term of Supervised Release of five years, the maximum period of supervision allowed in this case. Finally, Mr. Corkins requests the Court to recommend to the Bureau of Prisons that Mr. Corkins continue to receive mental health treatment while in BOP custody, and order the Probation Department to provide mental health treatment for Mr. Corkins while on Supervised Release. Mr. Corkins submits that the requested sentence is “sufficient, but not greater than necessary, to comply with the purposes” set forth in 18 U.S.C. §3553. In support of this request, counsel states:

1. Mr. Corkins appears before the Court for sentencing after having pled guilty to one count of Interstate Transportation of a Firearm and Ammunition, in violation of 18 U.S.C. §924(b); Assault With the Intent to Kill While Armed, in violation of 22 D.C. Code Section 401 and 4502; and Committing and Act of Terrorism While Armed, in violation of 22 D.C. Code Sections 3152, 3153 and 4502.

2. Mr. Corkins is 29 years old and has had no prior contact with the criminal justice system. At the time of the instant offense Mr. Corkins was under the care of both a psychiatrist and a licensed therapist, after having been diagnosed with Major Depressive Disorder with Psychotic Features. Mr. Corkins began receiving mental health treatment six months earlier (in February of 2012), when he voluntarily sought mental health treatment at the County of San Francisco Department of Public Health's Mission Mental Health Clinic. Mr. Corkins sought treatment at the Mission Mental Health Clinic because he was experiencing auditory hallucinations, and having thoughts of killing his parents and conservative right-wing Christians.

Mr. Corkins' attempt to get mental health treatment eventually resulted in his voluntary Civil Commitment to St. Francis Hospital in San Francisco. While voluntarily committed to St. Francis Hospital, Mr. Corkins was diagnosed with Severe Depression with schizophrenic aspects, and prescribed Zoloft and Zyprexa to treat his mental illness. Mr. Corkins was instructed to take each medication on a daily basis.

Upon his release from St. Francis Hospital, Mr. Corkins began receiving out-patient mental health treatment at the Mission Mental Health Clinic while he awaited a full mental health evaluation scheduled for April 3, 2012. Mr. Corkins' Mission Mental Health Clinic treatment included taking his medications daily and meeting weekly with an assigned therapist.

To ensure that he took his medication as prescribed, Mr. Corkins was given only a one-week supply of medication each week.

Mr. Corkins began meeting with his Mission Mental Health Clinic therapist in early February of 2012. Thanks to the daily medications and weekly treatment sessions with his therapist, Mr. Corkins' condition improved; and, in early March Mr. Corkins' parents asked him to come stay with them in their home in northern Virginia. Mr. Corkins agreed to return home and to continue his mental health treatment in northern Virginia. There is no evidence that Mr. Corkins was ever non-compliant with his mental health treatment regimen while in California.[1]

Before leaving California, Mr. Corkins made arrangements to receive mental health treatment with the Fairfax Falls Church Community Services Board clinic when he returned home to live with his parents. Within days of his arrival in northern Virginia, Mr. Corkins and his parents met with the staff at the Falls Church clinic to continue Mr. Corkins' mental health treatment. After evaluating Mr. Corkins, the staff at the Falls Church clinic diagnosed Mr. Corkins with Major Depressive Disorder with Psychotic Features.

Initially, Mr. Corkins underwent the same mental health treatment program developed in California: weekly treatment sessions with a licensed therapist, coupled with daily doses of Zyprexa and Zoloft. Mr. Corkins was also assigned a treating psychiatrist to prescribe and monitor his medications. The clinicians at the Falls Church clinic noted Mr. Corkins was fully amenable to mental health treatment.

---

[1]Copies of Mr. Corkins' medical records from California have been provided to the Government simultaneously with the filing of this Sentencing Memorandum.

In mid-May, Mr. Corkins' treating psychiatrist changed Mr. Corkins medications, replacing the Zyprexa with a daily dose Haldol. Mr. Corkins' condition improved markedly on the new medication.

In mid-June, Mr. Corkins' treating psychiatrist changed the manner in which Mr. Corkins ingested the prescribed Haldol – from daily doses to a monthly shot of Haldol Decanoate, a time release form of the drug. Mr. Corkins' therapist also reduced Mr. Corkins' treatment sessions to one session every two weeks.

Mr. Corkins received his second Haldol Decanoate shot on July 17, 2012. At the time Mr. Corkins received the second Haldol Decenoate shot, his treating psychiatrist noted Mr. Corkins was no longer experiencing any depression or desire to harm himself or others. The treating psychiatrist scheduled the next Haldol Decenoate injection for August 14, 2012.

One week later (July 23, 2012), Mr. Corkins met with his therapist, who noted Mr. Corkins was doing well and that Mr. Corkins fully accepted the continued need for the medication prescribed by his treating psychiatrist. His therapist further noted Mr. Corkins had no plans to harm himself or anyone else. Because of his improved condition, coupled with his faithful compliance with his mental health treatment regimen, the therapist reduced Mr. Corkins' treatment sessions to one session each month. The therapist scheduled the next therapy session for the week of August 20, 2012.[2]

Tragically, Mr. Corkins missed his August 14, 2012, Haldol Decenoate injection. As the Court knows, the instant offense occurred the next day. When questioned by the police after his

---

[2]Copies of Mr. Corkins' medical records from Virginia have been provided to the Government simultaneously with the filing of this Sentencing Memorandum.

arrest, it was apparent the demons that led Mr. Corkins to seek treatment in San Francisco six months earlier had returned.

On August 16, 2012, the day after his arrest, the medical staff at the D.C Jail immediately resumed Mr. Corkins' Haldol injections and his mental health treatment. Since resuming his medication at the D.C. Jail, Mr. Corkins has presented no signs or symptoms of psychosis or mental health distress.

3. Within days of his arrest and the appointment counsel, Mr. Corkins informed the Government through counsel of his desire to accept responsibility for his conduct and to plead guilty. Mr. Corkins waived his right to a Detention Hearing, and sought numerous exclusions under the Speedy Trial Act to conduct plea negotiations. Mr. Corkins accepted the Government's plea offer in January of 2013. The Court accepted the plea agreement on February 6, 2013. Mr. Corkins filed no pre-trial motions in this matter. And, as will be readily apparent at sentencing in this case, Mr. Corkins is deeply remorseful for actions in this case. Contrary to the baseless assertion in the Government's Sentencing Memorandum that Mr. Corkins only pled guilty "when faced with the overwhelming evidence of his crime," Mr. Corkins in fact plead guilty because wanted to accept responsibility for the crimes he committed.

**DISCUSSION**

In imposing the sentence in this case, the Court must consider all the factors set forth in 18 U.S.C. §3553(a). Gall v. United States, 128 S. Ct. 586 (2007). Pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth in Title 18 U.S.C. §3553(a).

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged.

Pursuant to 18 U.S.C. § 3661:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Section 3582 of Title 18 states that

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

Although the Court is still required to consult the Guidelines in determining the what sentence to impose pursuant to 18 U.S.C. §3553, the Court may not presume that the resulting guideline sentence is a correct one. Rita v. United States, 127 S. Ct. 2456, 2457. The Court is

free to consider whether the guideline sentence itself "fails to properly to reflect §3553(a) considerations" in the case at hand. Rita, 127 S. Ct. At 2465.

**1. Advisory Guideline Range**

The Probation Department, using the 2012 edition of the Sentencing Guidelines Manual, has concluded that the Total Offense Level for **Count One** (Interstate Transportation of a Firearm and Ammunition) in this case is 34 and that Mr. Corkins' Criminal History Category is I, resulting in an advisory sentencing range for imprisonment of 151-188 months. This sentencing range includes a cross-reference to U.S.S.G. §2A2.1 (Assault With the Intent to Murder, Attempted Murder), and a four-level increase in the Offense Level due to the injuries sustained by Mr. Johnson. However, pursuant to U.S.S.G. §5G1.1(a), the statutorily authorized maximum sentence of 120 months is less than the minimum recommended sentence; therefore, the stautorily authorized maximum sentence of 120 month is the recommended guideline sentence for ttis count. Without the cross-reference to U.S.S.G. §2A2.1 (but including the four-level increase due to the injuries sustained by Mr. Johnson), the Total Offense Level for Count One in this case would be 18, resulting in an advisory sentencing range for imprisonment of 18-24 months.

Using the voluntary Superior Court of the District of Columbia Guidelines, the Probation Department has concluded that **Count Two** (Assault With the Intent to Kill While Armed) is in Group Three of the Master Grid and that Mr. Corkins has a Criminal History Score of A, resulting in an advisory sentencing range for imprisonment of 90-180 months.

Using the voluntary Superior Court of the District of Columbia Guidelines, the Probation Department has concluded that **Count Four (**Committing and Act of Terrorism While Armed) is

in Group Four of the Master Grid and that Mr. Corkins has a Criminal History Score of A, resulting in an advisory sentencing range for imprisonment of 48-120 months.

Mr. Corkins does not dispute the Probation Department's calculation of the guideline ranges for each count in this case.

**2. Imposition of Sentence Pursuant 18 U.S.C. 3553**

As noted above, pursuant to 18 U.S.C. §§ 3562 and 3553(a) sentencing courts should consider the need for the sentence imposed 1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 2) to afford adequate deterrence to criminal conduct; 3) to protect the public from further crimes of the defendant; and 4) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the range of sentences available, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offenses charged. Specifically, courts should "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" set forth above.

**Nature of the Offense**

There is no question that the offenses to which Mr. Corkins has pled guilty are extremely grave, and but for the actions of Mr. Johnson could have been far more serious. And if Mr. Corkins were unrepentant and unremorseful for his conduct, and not suffering from a mental

illness at the time he committed the offenses, a severe sentence might indeed be warranted in this case.

The Government cites United States v. Gorbey, 54 A.3d 668 (D.C. 2012), a case in which the defendant received an aggregate sentence of 264 months of imprisonment, as "somewhat instructive" with regard to sentencing in this case. Mr. Corkins agrees with the Government that Gorbey is somewhat instructive, but not for the reasons articulated by the Government. Indeed, a cursory review of Gorbey refutes instead of supports the severe sentence sought by the Government in this case.

On January 18, 2008, Mr. Gorbey was stopped by the United States Capital Police after a concerned citizen notified the police that a man armed with a shot-gun had asked her for directions to the Supreme Court. 54 A.3d at 675. At the time he was stopped near the Supreme Court, Mr. Gorbey was wearing a bullet proof vest, and carrying a shotgun and a sword. He was armed with twenty-seven additional shotgun shells and multiple hunting knives. In Mr. Gorbey's truck, which was parked nearby, the police found a bomb, a large amount of black powder, percussion caps, more than 550 rounds of long rifle ammunition and 200 rounds of other ammunition. Id. at 676.

The court appointed counsel from the Public Defender Service to represent Mr. Gorbey, but Mr. Gorbey elected to proceed pro se. Id. at 680, n. 9. Mr. Gorbey adamantly refused any mental health treatment. Id. at 686. He filed numerous pre-trial motions, vigorously challenging not only the evidence against him but also the authority of the court to try him on the charges brought against him. Id. at 681. After a seventeen-day jury trial, Mr. Gorbey was convicted of all counts. After trial, Mr. Gorbey refused to be interviewed by the Probation Department for his

Pre-Sentence Report. At sentencing, Mr. Gorbey maintained his innocence, showed no remorse for his conduct and argued instead (as he had during the trial) that he had been the subject of government conspiracy.

The Government fares no better in its reliance on United States v. Abdo, (11-CR-182 W.D. of Texas), in which the defendant, Naser Jason Abdo, sought to detonate a bomb inside a busy Texas restaurant filled with U.S. soldiers from Fort Hood, and then shoot and kill anyone who survived the bombing. Abdo vigorously challenged the charges brought against him, filing numerous pre-trial motions. While awaiting trial, Abdo, believing he was HIV positive, spat blood at a Deputy United States Marshal in an attempt to infect the Deputy. After a four-day jury trial, a jury convicted Abdo of all charges in less than three hours. At sentencing, after having fired his trial his attorneys and electing to proceed pro se at sentencing, Abdo remained defiant, vowing to "never end" what he considered was a "holy war" against the United States government for its treatment of the people of Iraq and Afghanistan.

The Government's reliance on United States v. Harpsham, Cr. No. 11-42, in which the defendant received a 32 year sentence, is equally misplaced. Harpsham, an avowed and unrepentant white supremacist, built a bomb containing shrapnel covered with rat poisoning, and placed the bomb at a busy intersection on the route of a Martin Luther King, Jr. Unity March in Spokane, Washington. November 23, 2011, Government Sentencing Memorandum, Doc. 224. Fortunately, Harpsham was apprehended before the bomb could be detonated. At the time he was apprehended, Harpsham had in his possession and AK-47, a handgun and a "modified digital clock as a timing device." Id. at p. 5.The Government characterized Harpsham's crime as an "act of domestic terrorism," and noted that Harpsham's conduct "created a substantial risk of death or

serious bodily harm to many innocent persons and were motivated to intimidate or coerce a civilian population." Id. at p. 4.

Harpsham filed multiple pretrial motions seeking to suppress evidence and challenging the Government's expert testimony. After "six months of actively litigating" pretrial matters, and just five day before his trial was set to begin Harpsham pled guilty. December 23, 2011, Memorandum Opinion, Doc. No. 236, at p. 2. At sentencing, however, an unrepentant Harpsham sought to withdraw his guilty plea, claiming that he was not guilty of charges to which he had plead guilty. The district court denied Harpsham's request to withdraw his guilty plea and imposed a sentence of 32 years.

While the intended harm in the above-referenced cases is indeed similar to the intended harm in the instant case, Mr. Corkins' mental health background and post arrest conduct is markedly different. As noted earlier, Mr. Corkins informed the Government his desire to accept responsibility for his conduct and to plead guilty within days of his arrest. Rather than file any pretrial motions challenging the Government's case, Mr. Corkins sought instead several exclusions under the Speedy Trial Act to conduct plea negotiations. While incarcerated at the D.C. Jail Mr. Corkins has resumed his mental health treatment and continues to be amenable to treatment. More important, throughout the pendency of this case Mr. Corkins has continued to accept responsibility for his conduct, and he is deeply remorseful for actions in this case.

As the Court knows, counsel has hired Dr. Richard Ratner to conduct a Psychiatric Evaluation of Mr. Corkins. A copy of Dr. Ratner's Evaluation has been provided to the Court separately under seal and to the Government.

Dr. Ratner's Evaluation reveals that at the time he committed the instant offenses Mr. Corkins had been suffering from a chronic mental illness for a number of years – indeed, long before he voluntarily sought treatment in February of 2012. The Evaluation also reveals that Mr. Corkins is amenable to continued mental health treatment. To be clear, the purpose of Dr. Ratner's Evaluation is not to suggest that Mr. Corkins should not be held accountable for his actions. Rather, the purpose of the Evaluation is to ensure that the Court has a more full understanding of the case and Mr. Corkins than that presented by the Government in its Sentencing Memorandum.

Unquestionably, the instant case poses an exceedingly difficult decision for the Court. The conduct which brings Mr. Corkins before the Court for sentencing is nearly unimaginable. Yet, at the time he committed the instant offenses Mr. Corkins was suffering from a mental illness for which he voluntarily sought out treatment. Notwithstanding his mental illness, Mr. Corkins continues to accept responsibility for his conduct.

In striking a balance of the factors to be considered under 18 U.S.C. §3553, Mr. Corkins submits that an aggregate sentence of 138 months imprisonment, to be followed by the maximum period of supervised release of five years satisfies 18 U.S.C. §3553's dictate that the Court impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

DAVID W. BOS.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC 20004
(202) 208-7500